1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRANK LEWIS,<br><br>　　　　　　　　　　　Petitioner,<br><br>　vs.<br><br>DANIEL PARAMO, Warden, et al.,<br><br>　　　　　　　　　　　Respondent(s). | CASE NO. 14cv890-LAB (JLB)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION, AS MODIFIED;**<br><br>**ORDER GRANTING MOTION TO DISMISS; AND**<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

On April 14, 2014, Petitioner Frank Lewis, a prisoner in state custody, filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, collaterally attacking his convictions for second degree murder, attempted murder, and shooting at an occupied vehicle, and attendant jury findings.

The petition was initially referred to Magistrate Judge Karen Crawford for report and recommendation, as provided by 28 U.S.C. § 636 and Fed. R. Civ. P. 72. It was then transferred to Magistrate Judge Jill Burkhardt. Respondent Daniel Paramo moved to dismiss the petition as time-barred. After receiving briefing, Judge Burkhardt issued her report and recommendation (the "R&R"), recommending denying the petition. The R&R directed Lewis to file any objections he might have no later than February 2, 2015. Instead of doing that, he filed a motion for extension of time to object. The motion is dated February 3 and the affidavit

on the proof of service is dated February 5. In other words, Lewis waited until at least three days after the deadline passed to seek an extension. The Court, however, granted the requested extension (Docket no. 23) and gave Lewis until March 9, 2015 to file his objections. That order cautioned Lewis that it appeared he had not been diligent in preparing his objections, and he should not expect additional extensions.

On March 10, the day after objections were due, someone identifying himself as Jonathan Bloom with the Criminal Research Association in Chicago called about seeking an extension. Bloom said he would be substituting in as counsel for Lewis within three days. But that time has passed, and Bloom has still not substituted in. Furthermore, a review of public records shows there is no one by that name admitted to practice law either in California or in this Court.[1] As of the date of this order, no objections have been received.

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. Fed. R. Civ. P. 72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id.* "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). This section does not require some lesser review by the district court when no objections are filed. *Thomas v. Arn*, 474 U.S. 140, 149–50 (1985). The "statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003) (en banc) (emphasis in original).

While the Court is under no obligation to review the record to determine compliance with AEDPA's requirements, it may properly consider, *sua sponte,* threshold issues such as timeliness, procedural default, and exhaustion. *Day v. McDonough*, 547 U.S. 198, 205–06, 209–10 (2006) (citing *Granberry v. Greer*, 481 U.S. 129 (1987); *Long v. Wilson*, 393 F.3d 390, 404 (3d Cir. 2004)).

---

[1] A review of online directories suggests the Criminal Research Association is run by some of the same people who work or worked for the NALR, the organization Lewis says abandoned him before. *See* discussion at 4:8–9:15, *infra.*

Because Lewis has not objected to any of the R&R's factual findings, including its recitation of the timeline of his direct appeals and state habeas review, the Court accepts it as correct and **ADOPTS** it. While not required to review the R&R de novo, the Court has reviewed it, and finds it to be correct. The Court, however, must decide whether a certificate of appealability should issue. This requires the Court to decide whether reasonable jurists could disagree with the Court's resolution of the claims, or at least could conclude that the issues presented are "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). This order therefore modifies and supplements the R&R with additional analysis.

**Factual and Procedural History**

The following factual background is taken both from the California Court of Appeals' denial of Lewis' direct appeal (Lodgment 6, Docket no. 17-3), which was the last reasoned state court decision on the merits, and from the R&R's unobjected-to factual findings.

Around 2006 through 2007, when Lewis was in prison, he became acquainted with Fred Bostick.  In August, 2008, after his release, Lewis became angry when he learned Bostick had been dating his girlfriend, Shannon Butler, while he, Lewis, was in prison.  He told acquaintances that he was looking for Bostick and was going to "get" him. On August 28, 2008, Lewis borrowed some polishing compound from an acquaintance, who then saw him polishing six or seven bullets. Lewis showed his acquaintance his 9 millimeter semi-automatic pistol. The next day, as Lewis was driving with Butler, he spotted Bostick's car on the road. Bostick was driving, and a woman named Elizabeth Culbertson was sitting next to him.  When Lewis saw Bostick, he said something to the effect of "I will show him," and swerved to block Bostick's car. Lewis exited his truck, carrying the gun, and ran towards Bostick's car, yelling "you mother-fucker," and fired a shot into the car. The shot, however, missed Bostick and hit Culbertson, who later died from the gunshot wound. Lewis fled the scene.

The jury convicted Lewis of second degree murder (of Culbertson), attempted murder (of Bostick), and shooting at an occupied vehicle. They also made findings that he

1 intentionally and personally discharged a firearm within the meaning of Cal. Penal Code
2 § 12022.53(d), and caused great bodily injury and death to a person.

3      Lewis pursued direct appeals through the California Supreme Court, which denied his
4 appeal on August 17, 2011. He filed no *certiorari* petition, and his conviction became final
5 90 days later, on November 25, 2011. Absent tolling, AEDPA's one-year limitations period
6 expired on November 26, 2012. *See* 28 U.S.C. § 2254(d).

7 **Timeliness**

8      Lewis argues he is entitled to equitable tolling because he did everything he could to
9 file a timely habeas petition, and was delayed and misled by the National Association of
10 Legislative Review (NALR). He alleges the NALR agreed to represent him but then failed to
11 do so, and also that it misled him into thinking he had more time than he actually did to file
12 his state habeas petitions. A petitioner seeking equitable tolling bears the burden of
13 establishing both that he has been pursuing his rights diligently, and that some extraordinary
14 circumstances prevented timely filing. *Gibbs v. Legrand*, 767 F.3d 879, 884–85 (9th Cir.
15 2014). Once Respondent put timeliness in issue in his motion to dismiss, Lewis was on
16 notice that he needed to establish his entitlement to tolling.

17      Lewis filed his first state habeas petition in the California Superior Court on August 9,
18 2012, 258 days after his conviction became final. (Lodgment 9, Docket no. 17-16.) That
19 court denied the petition on September 26, 2012. (Lodgment 10, Docket no. 17-17.) Then,
20 52 days later, on November 17, 2012, he filed his second petition in the California Court of
21 Appeal. (Lodgment 11, Docket no. 17-18.) The R&R concluded the second petition was
22 timely. After the Court of Appeals denied his petition on January 24, 2013 (Lodgment 12,
23 Docket no. 17-19), he waited 250 days before filing a petition in the California Supreme Court
24 250 days later, on October 1, 2013. (Lodgment 13, Docket no. 17-20.) The R&R concludes
25 he is not entitled to "gap tolling" or "interval tolling" for this time period. The California
26 Supreme Court denied the petition on January 21, 2014 without explanation. (Lodgment 14,
27 Docket no. 17-21.) He filed his petition in this case on the 83rd day after that denial.
28 / / /

    14cv890

1    The Court agrees with the R&R's rejection of Lewis' claim that his "abandonment" by

2  NALR entitles him to tolling, but even if it were inclined to agree that he was abandoned,

3  tolling would not render his petition timely. Before Lewis even wrote to NALR,[2] 258 days of

4  AEDPA's one-year limitations period had elapsed. After the California Supreme Court denied

5  his petition, another 82 days elapsed before he filed his petition in this Court. This means that

6  from the time Lewis filed his first state petition until the last one was denied, he must show

7  he is entitled to equitable tolling for most of the time period; if more than 25 days of untolled

8  time elapsed during that time period, his petition is untimely.

9    The Court agrees with the R&R's analysis of the NALR "abandonment" claim. First,

10  Lewis never formally retained NALR. Instead, its December 20 letter said, to the extent his

11  claims were based on actual innocence, it was "willing to accept [his] case" but would first

12  need him to review his court records. (Docket no. 16, Ex. B at 20.) It also expressed

13  confidence that the habeas petition then pending before the California Court of Appeals

14  would not be ruled on immediately, and no new petition needed to be filed until the pending

15  one was denied. (*Id.*) Lewis' briefing makes clear he badly wanted legal assistance, and that

16  he was hoping one of the attorneys he wrote to would help him. But he had no right to

17  counsel in pursuing habeas review, *see Bonin v. Vaszquez*, 999 F.2d 425, 430 (9th Cir.

18  1993), and his hopefulness and desire to find representation did not justify delay. *See In re*

19  *Douglas*, 200 Cal. App. 4th 236, 244 (Cal. App. 4 Dist. 2011) (citing *In Re Robbins*, 18 Cal.

20  4th 770, 780–81 (1998)) (examination of habeas filings' timeliness is governed by objective,

21  "reasonable person" standard).  As of the date Lewis received this letter, he could not have

22  reasonably assumed that NALR would actually try to help him with anything other than an

23  actual innocence claim, even assuming its review of the records showed it could do so. This

24  letter shows  that both  Lewis  and  NALR  knew that as soon as  the pending petition  was

25  / / /

26  / / /

27  _____

28    [2] The R&R expressed doubt that the letter Lewis attached to his opposition was authentic, but reserved ruling on the issue. (R&R at 9 n.1.) For purposes of this analysis, the Court will assume its authenticity.

denied, a new one would be due.  This was the last communication Lewis mentions receiving from NALR.[3]

Under California law, a habeas petitioner who knows of the facts underlying his claim is expected to present it within a reasonable time, or if he does not do so, he must explain the delay. *In re Clark*, 5 Cal.4th 750, 779–80 (1993). He can rely on counsel who are already representing him to include all potentially meritorious claims in his petitions — but only if he has alerted his counsel to the issues. *Id.* at 779 (petitioner must alert his counsel to issues); 780 (petitioner has a right to assume counsel representing him is competent and is presenting all potentially meritorious issues). This applies to counsel who are already representing a petitioner when a petition is filed. *Id.* at 780. There is no federal right to counsel, competent or otherwise, on habeas review. *Bonin v. Calderon*, 77 F.3d 1155, 1159 (9th Cir. 1996), so on federal habeas review, a petitioner bears the risk that his counsel will fail to follow state procedural rules. *Coleman v. Thompson*, 501 U.S. 722, 753–55 (1991). In other words, an attorney's error in failing to act is not an external factor, but is imputed to the petitioner. *Id.* at 753–54.

Assuming NALR was a law firm, its negligence resulted from misunderstanding the statute of limitations. This is evidenced by its letter, in which the writer, identified as D. Wenger, said that in California, as in Arkansas, there was no statute of limitations in state court, although there was one in federal court. (Docket 16, Ex. B at 20.) That is technically true, though confused, because California's rule is that a petition is timely if filed "without substantial delay" and within a "reasonable time" — rather than within a particular time. *Catlin v. Superior Court*, 51 Cal.4th 300, 307 (2011).  Attorney misconduct must be "egregious" and must amount to an "extraordinary circumstance" before tolling is merited, *Holland v. Florida*, 560 U.S. 631, 651–52 (2010), and this is no more than negligence. The Court agrees with the remainder of the R&R's analysis regarding attorney abandonment.

---

[3] In his petition to the California Supreme Court, Lewis said he had received a "response" from NALR, Inc. dated June 3, 2013 (Lodgment 113 at xi (Docket no. 17-20 at 12).) But he didn't say what the response was. Although he said he was attaching all the letters, the response was not among them.

A review of federal caselaw, however, suggests that the NALR may not actually be a law firm or have any lawyers on staff. In 2001 the NALR, then a corporation, attempted to appear *pro se* when sued by prisoners. *See St. Clair v. Nat'l Ass'n of Legislative Review*, 201 WL 764914 (N.D.Cal., June 26, 2001).[4] And at least three other petitioners in California have argued that NALR's abandonment of their cause should entitle them to tolling. *See Westfall v. Hernandez*, 2009 WL 2486223 (C.D.Cal., Aug. 12, 2009); *Hodge v. Hernandez*, 2009 WL 1586075 (C.D.Cal., Mar. 4, 2009); *Kennedy v. Hernandez*, 2008 WL 4378183 (C.D.Cal., Aug. 25, 2008). None were successful, although only *Hodge* reached the tolling issue.

Lewis has not alleged, briefed, or argued this possibility; he maintains NALR was his counsel and were representing him. But out of an abundance of caution the Court will consider it.  Assuming Lewis was defrauded by non-lawyers purporting to offer him legal representation that they in fact could not provide, he might have a stronger claim than if his attorneys were negligent. In those circumstances, a petitioner <u>may</u> be entitled to equitable tolling. *Nunez v. Gonzales*, 231 Fed. Appx. 666, 669 (9th Cir. 2007). That said, once the petitioner becomes aware of the harm resulting from the misconduct, tolling ends. *Id.* (citing *Fajardo v. I.N.S.*, 300 F.3d 1018 (9th Cir. 2002)). And of course, Lewis' conduct is measured by an objective, "reasonable person" standard, *Douglas*, 200 Cal. App. 4th at 244, so the question is not when he actually concluded NALR was not doing its job, but when it would have been objectively reasonable for him to know and begin taking corrective action.

Lewis' briefing and exhibits show he became suspicious that NALR was doing nothing; he attaches letters he wrote to it on May 14, 2013, and August 15, 2013. (Docket no. 16 at 14.) He says he wrote two others as well, though he did not keep copies and does not mention when he sent them. (*Id.*) The August 15 letter, however, references two earlier letters. (Docket no. 16 at 5.) The tone and contents of the letter make clear his earlier requests for explanation went unanswered.

///

---

[4] Two of the staff members mentioned in the opinion are listed as NALR officers on the letterhead of the letter Lewis has attached.

- 7 -

14cv890

Lewis then says that during the time period of August 15 through October 1, 47 days in all, he worked on his petition. (*Id.*)  Though his briefing on the motion to dismiss does not mention it, he earlier told the California Supreme Court that he received his files on September 10, 2013.  (Docket no. 17-20 at 13.)  Why he took so long to prepare and file his petition, however, is a mystery.  The petition he eventually filed is identical to the petition he had filed in the California Court of Appeals, except for a preface explaining the delay (which Lewis' files would not have helped with).  It is therefore clear he did not need his files to begin working on his petition. With reasonable diligence, he could have obtained a copy of his earlier petition, written the preface, and filed his petition much earlier. The fact that he waited months after he knew no petition had been filed, and after he had become suspicious of NALR before requesting his files and beginning to work on his petition, does not show diligence.

Although Lewis mentioned his complaints about NALR to the California Supreme Court in his late petition, that court denied the petition without comment. This does not mean it was accepted as timely. *United States v. Chavis*, 546 U.S. 189, 197–98 (2006) (holding that a silent denial by the California Supreme Court should not be presumed to have been found timely). Rather, in the case of a silent denial the reviewing court must decide whether the filing of the request for review was made within what California would consider a "reasonable time." *Id.* at 198.

Ordinarily a delay of 250 days would be unreasonable. Here, Lewis has provided an explanation for part of that delay, but not all of it. With reasonable diligence, he could and should have discovered that no petition had been filed, that NALR was not representing him, and that he would have to file his petition himself — all well before he actually did.  The Court holds that in view of his lack of diligence for a substantial part of the delay, he is not entitled to tolling for the entire gap or interval between filings. Nor would he be entitled to statutory tolling while his untimely (and thus improperly-filed) petition was pending in the California Supreme Court. *See Chavis*, 546 U.S. at 198.  Regardless of whether this means his petition in the California Supreme Court was untimely and therefore none of the gap is tolled, or

1   whether he is entitled to tolling of some but not all of the gap makes no difference. If the

2   former, his petition is clearly time-barred. If the latter, he would have to establish that he was

3   entitled to at least 25 days of tolling, which he has failed to do.

4        The R&R effectively explains why this case is different from *Spitsyn v. Moore*, 345

5   F.3d 796 (9th Cir. 2003), where attorney abandonment did entitle a petitioner to tolling. In that

6   case, the petitioner had formally retained counsel around the time AEDPA's limitations period

7   began to run. Here, Lewis waited until near the end of the limitations period, and after the

8   filing of two *pro se* petitions, before contacting NALR. And even then, NALR was not formally

9   retained, said it would first need to review the files before formally accepting the case, and

10  told him it would represent him to the extent he was bringing an actual innocence claim. After

11  that, he did not hear from the organization.  In *Spitsyn*, the petitioner could not have filed his

12  petition without his file. 345 F.3d at 801.  Here, the R&R found (and the Court has accepted)

13  that Lewis could, and did.

14       Lewis has therefore not met his burden of showing that he is entitled to tolling.  The

15  Court is aware that reasonable jurists might disagree with this determination, *see Stewart v.*

16  *Cate*, 757 F.3d 929, 944–45 (9th Cir. 2014) (discussing California courts' excuse of

17  sometimes long gaps between rounds of habeas review), or at least believe Lewis' claims

18  deserved encouragement to proceed further.   In order to make the required ruling regarding

19  a certificate of appealability, the Court will therefore exercise its discretion to examine other

20  threshold issues.

21  **Other Bases for Denial**

22       The two reasoned decisions on his petitions both held that his claims were non-

23  cognizable on habeas review because they were identical to those raised on direct appeal.

24  His petition to the California Supreme Court raised the same claims for relief, and that court

25  denied the petition without comment. The Court looks through that denial to the last reasoned

26  decision, *see Ylst v. Nunnemaker*, 501 U.S. 797, 891–6 (1991), which was that of the Court

27  of Appeals. On direct appeal, where denial was on the merits, the California Supreme Court

28  / / /

1  also denied review without comment. To determine the state courts' reasoning on the merits

2  of Lewis' claim, the Court looks through to the Court of Appeals' denial of his appeal. *See id.*

3      That being said, in order to exhaust his claims, Lewis was required to present them

4  to the California Supreme Court and to give that court a fair opportunity to rule on them.

5  § 2254(b), (c); *Granberry*, 481 U.S. at 133–34; *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45

6  (1999). Exhaustion of federal claims requires that a petitioner have properly alerted the state

7  court to the federal nature of his claims. *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995). The

8  petitioner must have cited particular provisions of the U.S. Constitution or relevant federal

9  cases applying federal law binding on the state court. *Gray v. Netherland,* 518 U.S. 152,

10  162–63 (1996); *Castillo v. McFadden*, 399 F.3d 993, 1001 (9th Cir. 2005).

11      Exhaustion also requires that the federal claims have been presented to the state

12  courts in a context in which the claims would be considered on the merits. *Castille v.*

13  *Peoples*, 489 U.S. 346, 351–52 (1989). Here, Lewis' petition did not present his claims to the

14  California Supreme Court in such a context. The last time he did so was in his direct appeal

15  to the California Supreme Court. (Lodgment 7, Docket no. 17-14.)

16      Lewis was represented on direct appeal by counsel; these briefs are orderly, and

17  arguments based on federal law are fairly easily identified. Most of his claims there were

18  based on alleged errors of state law, which are not cognizable on federal habeas review.

19  *See Swarthout v. Cooke*, 562 U.S. 216, 861 (2011). His petition to this Court is essentially

20  a rehash of his state court brief.

21      The first federal claim he raises is that admission of evidence of a supposedly

22  unrelated shooting rendered the criminal trial so fundamentally unfair as to violate the 14th

23  Amendment's due process guarantee. (Docket no. 17-14 at 11–12.) He argues it was unfair

24  because it permitted the jury to speculate about the circumstances of that shooting, and

25  because it forced him to present evidence that he did in fact shoot Bostick, in order to head

26  off jury speculation about the connection of the other shooting to this case. The brief cites

27  *Strickland v. Washington*, 466 U.S. 688, 693–94 (1984) and *Cone v. Bell*, 556 U.S. 449, 129

28  / / /

1  S.Ct. 1769, 1773 (2009), but only in support of the standard for establishing prejudice from

2  this alleged error. (*Id.* at 15–16.)

3      The next citation to or mention of any federal law is a citation to a Colorado state

4  decision which in turn cites *Bollenbach v. United States*, 326 U.S. 607, 612–13 (1946).

5  (Docket no. 17-14 at 22.) This citation is offered in support of Lewis' claim that the trial court

6  failed to properly respond to a jury question, and *Bollenbach* is indirectly invoked in support

7  of the principle that a court commits prejudicial error when it fails to respond adequately to

8  a jury inquiry. (*Id.*) The brief again cites the 14th Amendment, arguing that the instructional

9  error so infused the trial with unfairness that Lewis was denied due process of law. (*Id.* at

10 23.)

11     Finally, the brief cites *Jackson v. Virginia*, 443 U.S. 307 (1979) and the 14th

12 Amendment in support of Lewis' claim that he was convicted on insufficient evidence.

13 (Docket no. 17-14 at 28, 33.)

14     After weeding out the non-cognizable state law claims, the only potentially federal

15 issues he gave the California Supreme Court a fair opportunity to address were the claim that

16 the state court's erroneous evidentiary ruling so infused the trial with error as to deny him his

17 14th Amendment due process rights, that the state court's error in failing to properly respond

18 to a jury question did the same, and that he was convicted on the basis of insufficient

19 evidence, in violation of *Jackson v. Virginia*. In fact, however, the first and second of these

20 incorporate state law standards and do not rely on federal law. The evidentiary claim argues

21 solely on the basis of state law that admission of the evidence was erroneous. The jury

22 instructional claim, similarly, argues that the trial judge acted inappropriately as measured

23 by state law standards. Accepting the Court of Appeals' rulings on the two state law issues,

24 as federal courts must do, there was in fact no evidentiary error and no jury instructional

25 error. (Docket no. 17-3 at 6–7 (finding trial court's evidentiary ruling correct), 8–11 (finding

26 trial judge acted properly when he answered jury's question by referring them to original

27 instructions).)  The remaining references to federal law pertain to standards for

28 / / /

establishing prejudice; they do not by themselves show that the claim is federal in nature. The Court therefore holds that most of Lewis' claims are unexhausted.

The insufficiency of the evidence claim, though it cites *Jackson*, raises no argument that would invoke *Jackson*'s standard. Lewis admitted that he committed the shooting, but claimed he was only trying to scare Bostick, and the gun discharged accidentally while Lewis was tapping it against Bostick's car window. Two witnesses agreed Lewis was tapping on the car window, but Bostick testified he simply shot from two or three feet away. The brief's sole argument was that the two other witnesses' testimony was more credible than Bostick's, which is an insufficient basis for a cognizable *Jackson* claim. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[U]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review.")

**Merits**

In *Carey v. Saffold*, 536 U.S. 214, 225–26 (2002), the Supreme Court pointed out that courts sometimes, for good reasons, address the merits of claims that are not properly presented. These include explaining to a prisoner that it was not merely a technicality that prevented him from maintaining relief, and giving a reviewing court alternate grounds for decision. *Id.* Another reason, present here, is to decide whether a certificate of appealability should issue.

Even assuming Lewis raised a federally-cognizable insufficiency of the evidence claim, the Court of Appeals' discussion (Docket no. 17-13 at 212–13) shows why it lacks even arguable merit.

Lewis was angry at Bostick for having sexual relations with his, Lewis', girlfriend, and threatened to "get" him. Well before the shooting, he prepared ammunition and a gun, which he carried with him.  When he saw Bostick's car, he swerved and cut it off. Then he ran towards it while carrying the loaded gun, saying "I need t talk to you, Mother-Fucker." When Bostick rolled up his windows and locked the car doors, Lewis either began tapping the car window with the gun barrel or else simply pointed it at Bostick. Either way, the gun fired and Lewis knew someone had been shot. Instead of reporting an accidental shooting or

summoning help, Lewis fled the scene and discarded the gun. He later told his acquaintances about shooting Bostick, without saying the gun had gone off accidentally.

As the Court of Appeals pointed out, there was abundant evidence Lewis intended to shoot Bostick. He had a well-known animus towards Bostick, and acted in a manner far more consistent with intentional rather than accidental shooting. To apply the *Jackson* standard, courts view the evidence in the light most favorable to the prosecution's case, and must sustain the conviction if any reasonable juror could have found the defendant guilty beyond a reasonable doubt. *United States v. Bailon-Santana*, 429 F.3d 1258, 1262 (9th Cir. 2005).

The Court has reviewed the merits of Lewis' other claims, even those not exhausted, and finds they do not meet the required standards for federal habeas relief.

**Conclusion and Order**

The R&R is modified to include the reasoning set forth above. So modified, it is **ADOPTED** and Respondent's motion to dismiss is **GRANTED**. The petition is **DENIED** and a certificate of appealability is also **DENIED**.

**IT IS SO ORDERED**.

DATED:  March 12, 2015

**HONORABLE LARRY ALAN BURNS**
United States District Judge